1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

R.S. COPPOLA TRUST - OCT. 19, 1995, *et al.*,

Plaintiffs,

v.

NATIONAL DEFAULT SERVICES, *et al.*,

Defendants.

Case No. 3:21-cv-00281-MMD-CSD

ORDER

12    **I.    SUMMARY**

13    Plaintiffs Ralph Stephen Coppola as Trustee of the R.S. Coppola Trust dated

14    October 19, 1995, as amended, and Ralph Stephen Coppola, the sole beneficiary of the

15    trust, sued Defendants for wrongful foreclosure, quiet title, and related causes of action in

16    state court generally in response to Defendant Wells Fargo Bank, N.A.'s attempts to

17    nonjudicially foreclose on 4785 Rio Pinar Drive, Reno, NV 89509 (the "Property"). (ECF

18    No. 30 ("SAC").) Defendants removed to this Court. (ECF No. 1.) Before the Court are

19    Defendants'[1] motion for judgment on the pleadings, seeking complete dismissal of

20    Plaintiffs' operative SAC (ECF No. 51 ("Motion")),[2] along with a corresponding request for

21
22

_____

[1]Wells Fargo Bank, N.A., World Savings Bank, FSB, Wachovia Mortgage, FSB, and The Bank of New York Mellon (incorrectly named as "BYN Mellon, N.A.") as Trustee for Securitized Trust World Savings Bank Mortgage Pass Through Certificates REMIC 23 Trust ("BNYM"). (ECF No. 51 at 1.) Defendant National Default Servicing Corporation ("NDSC") joined the Motion and corresponding request for judicial notice, along with the reply. (ECF Nos. 61, 62, 70.) The Court accordingly refers to the Motion as Defendants' Motion and otherwise treats it as if filed by all Defendants in this order.

[2]As noted, NDSC joined the Motion. (ECF No. 61.) The Court granted Plaintiffs two extensions of time *nunc pro tunc* to respond to the Motion (ECF No. 65) and accordingly treated Plaintiffs' response to the Motion (ECF No. 64) as timely filed (ECF No. 65). Defendants filed a reply in support of the Motion. (ECF No. 69.) NDSC joined the reply as well. (ECF No. 70.)

1    judicial notice (ECF No. 52),[3] and two motions regarding NDSC's declaration of non-
2    monetary status (ECF Nos. 40, 43). As further explained below, because Plaintiffs'
3    claims alleged in the SAC fail as a matter of law, the Court will grant the Motion, dismiss
4    the SAC in its entirety without leave to amend, and accordingly deny the motions regarding
5    NDSC's declaration of non-monetary status as moot.

6    **II.    REQUEST FOR JUDICIAL NOTICE**

7    Plaintiffs never responded to Defendants' request for judicial notice. (ECF Nos. 64
8    (declining to object to request for judicial notice), 66 (notice of non-opposition).) The Court
9    accordingly deems Plaintiffs to have consented to the Court granting Defendants' request
10   for judicial notice. *See* LR 7-2(d) ("The failure of an opposing party to file points and
11   authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion
12   for attorney's fees, constitutes a consent to the granting of the motion."). Moreover, and
13   alternatively, the Court grants Defendants' request for judicial notice because the pertinent
14   documents are properly subject to judicial notice. The documents that Defendants ask the
15   Court to take judicial notice of break into three categories: publicly-recorded documents
16   (ECF Nos. 52-1, 52-4, 52-5, 52-6, 52-10, 52-13); official letters from government agencies
17   responsible for banking administration (ECF Nos. 52-2, 52-3); and documents filed in state
18   and federal courts (ECF Nos. 52-7, 52-8, 52-9, 52-11, 52-12, 52-14, 52-15). Each of these
19   three categories of documents is properly subject to judicial notice. *See, e.g.*, *Wensley v.*
20   *First Nat. Bank of Nevada*, 874 F. Supp. 2d 957, 961 n.1 (D. Nev. 2012) (taking judicial
21   notice of publicly-recorded documents regarding real property); *United States v. Camp*,
22   723 F.2d 741, 744 n.** (9th Cir. 1984) (taking judicial notice of an official document
23   produced by a government agency and explaining the propriety of doing so); *Harris v.*
24   *Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (explaining that courts may properly
25   take judicial notice of "documents on file in federal or state courts"). Moreover, in declining

26

27   _____

28        [3]As also noted, NSDC joined the request for judicial notice. (ECF No. 62.) Plaintiffs
     did not timely oppose it, so Defendants filed a notice of non-opposition. (ECF No. 66.)

1    to respond to the request for judicial notice, Plaintiffs either do not dispute the authenticity

2    of any of the associated documents or have waived their ability to do so. The Court

3    accordingly grants Defendants' request for judicial notice and takes judicial notice of all of

4    the documents attached to their request. (ECF Nos. 52-1 through 52-15.)

5    **III.    FACTUAL BACKGROUND**

6         The Court constructs this factual background from facts it takes judicial notice of

7    and the allegations in Plaintiffs' SAC. In 2006, Coppola, as Trustee of the R.S. Coppola

8    Trust, executed a deed of trust as security for a loan in the amount of $612,000 (the "Loan")

9    made by World Savings Bank, FSB, which was recorded against the Property. (ECF No.

10   52-1 at 2 (the "DOT").) In 2007, World Savings Bank changed its name to Wachovia. (ECF

11   No. 52-2.) In 2009, Wachovia merged into Wells Fargo. (ECF No. 52-3.)

12        In the DOT, Coppola agreed to repay the Loan and pay all necessary taxes and

13   insurance on the Property. (ECF No. 52-1 at 4.) If Coppola stops repaying the Loan, the

14   DOT gives the "Lender" the ability to either demand payment in full or sell the Property.

15   (*Id.* at 14.) "Lender" is elsewhere defined as World Savings Bank, its successors, and/or

16   assigns. (*Id.* at 2.) Thus, Wells Fargo has the right to repayment under the Loan because,

17   as noted above, World Savings Bank changed its name to Wachovia and then merged

18   into Wells Fargo. Said otherwise, Wells Fargo is World Savings Bank's successor.

19        Plaintiffs stopped repaying the Loan in 2009, and have not paid anything on it since,

20   though Coppola has been renting portions of the Property out and receiving rental income.

21   (ECF No. 52-4 at 2; *see also* ECF No. 30 at 25.) Indeed, in the SAC, Plaintiffs allege that

22   they "have been using the entirety of the [Property] for the purpose of residing and earning

23   rental income from the [Property] without turning any of the rental income over to" Wells

24   Fargo for at least five years. *Id.* Plaintiffs further allege their use of the Property in this way

25   was continuous, uninterrupted, open, obvious, and known to Wells Fargo, and that they

26   "did not have [Wells Fargo's] permission to use the any of the [Property] or rental income

27   without paying the loan or rental income." *Id.*

28   ///

3

Case 3:21-cv-00281-MMD-CSD    Document 72    Filed 07/13/22    Page 4 of 13

1    Wells Fargo accordingly has attempted to foreclose on the Property three times but
2    has been unsuccessful because Coppola has successfully halted each foreclosure
3    through litigation in bankruptcy court, state court, and required foreclosure mediation
4    proceedings. (ECF Nos. 52-4, 52-6, 52-7, 52-8, 52-9, 52-10, 52-13, 52-14, 52-15.) Thus,
5    Wells Fargo has not yet completed foreclosure proceedings as to the Property.

6    Plaintiffs' SAC asserts 20 claims, but the relief sought in the SAC is a declaration
7    that Plaintiffs own the Property free and clear of any encumbrance, including a declaration
8    that Defendants, most notably Wells Fargo, cannot foreclose on the Property, and
9    including a declaration that the DOT is extinguished. (ECF No. 30 at 37.) In addition,
10   Plaintiffs seek a refund of any fees improperly collected by Defendants, emotional distress
11   damages, attorneys' fees, pre-and-post judgment interest, and "[m]onetary relief over
12   $100,000 but not more than $2,000,000,00[.]" (*Id.* at 38.) All Defendants except for NDSC
13   answered the SAC,[4] but none of them asserted any counterclaims against Plaintiffs. (ECF
14   Nos. 34, 47.)

15   Plaintiffs allege several primary theories in the SAC. First, Plaintiffs allege that the
16   Loan was securitized, and that securitization resulted in all Defendants losing any security
17   interest they may have had in the Property. (ECF No. 30 at 7-13.) Second, Plaintiffs allege
18   that no Defendants have standing to foreclose on the Property because none of them can
19   produce a tangible copy of the note corresponding to the DOT. (*Id.* at 13-16, 34-35.) Third,
20   Plaintiffs appear to allege that the Loan was paid off by virtue of the corporate transactions
21   where World Savings Bank changed its name to Wachovia and then Wachovia merged
22   into Wells Fargo, and to some extent because these corporate entities all engaged in
23   misconduct not necessarily specific to the Property. (*Id.* at 16-20, 30-32.) Fourth, Plaintiffs
24   allege they have extinguished the Loan through adverse possession by not paying it but
25   staying in the Property. (*Id.* at 24-26.)

26   ///

27

28

---

[4]Because NDSC instead filed its declaration of non-monetary status. (ECF No. 35.)

1    **IV.    LEGAL STANDARD**

2         "Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the

3    same standard of review applies to motions brought under either rule." *Gregg v. Hawaii,*

4    *Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation and internal quotation

5    marks omitted). "A judgment on the pleadings is properly granted when, taking all the

6    allegations in the pleadings as true, the moving party is entitled to judgment as a matter

7    of law." *Id.* (citation and internal quotation marks omitted).

8    **V.    DISCUSSION**

9         As noted, Defendants move to dismiss the SAC in its entirety. (ECF No. 51.)

10   Plaintiffs only contest the dismissal of several of their 20 claims but ask for dismissal

11   without prejudice of the claims they consent to the dismissal of (ECF No. 64), though

12   Defendants reply that the Court should dismiss all claims in the SAC with prejudice (ECF

13   No. 69 at 1-3). The Court accordingly first addresses the uncontested claims, then

14   individually addresses the contested claims, and later describes why the Court will not

15   grant Plaintiffs leave to amend. The Court also devotes a subsection of this discussion to

16   Defendants' unrebutted argument that there are no allegations in the SAC against BNYM,

17   and that World Savings Bank no longer exists. The Court further devotes two subsections

18   to NDSC.

19        **A.    Uncontested Claims**

20        Plaintiffs consent to dismissal of 13 of their claims in the SAC. (ECF No. 64 at 10,

21   14-15, 16, 17.) Those claims are, as summarized by Defendants in reply: fiduciary duty,

22   quiet title, temporary restraining order, prescriptive easement, equitable easement,

23   declaratory relief, slander to title, abuse of process, "no forecloseable investment in

24   contract," "lien extinguishment," RESPA, "lack of unity," and laches (RESPA). (ECF No.

25   69 at 1 n.2.) The Court accordingly dismisses those thirteen claims. *See* LR 7-2(d). The

26   Court will address the issue of whether to grant leave to amend holistically—as to the

27   whole SAC—towards the conclusion of this discussion section.

28   ///

1

2    **B.    Wrongful Foreclosure**

3        Defendants argue Plaintiffs' wrongful foreclosure claim fails because Coppola is in

4    default on the Loan and Wells Fargo has not yet successfully foreclosed on the Property.

5    (ECF No. 51 at 8-10.) Plaintiffs primarily counter that Wells Fargo has never 'shown them

6    the note.' (ECF No. 64 at 7-9.) The Court agrees with Defendants.

7        "The 'show me the note' argument has been resoundingly rejected in Nevada."

8    *Juntilla v. RESI Home Loans IV, LLC*, Case No. 2:12-cv-00790-MMD, 2013 WL 1819636,

9    at *1 (D. Nev. Apr. 29, 2013); *see also Evalobo v. Aldridge Pite, LLP*, Case No. 2:16-cv-

10   00539-APG-VCF, 2016 WL 7379021, at *4 (D. Nev. Dec. 20, 2016) ("'the defendants 'do

11   not need to produce the note to the property in order to proceed with a non-judicial

12   foreclosure.'") (citing *Juntilla*, 2013 WL 1819636, at *1). Plaintiffs' primary argument

13   contrary to Defendants' Motion to dismiss their wrongful foreclosure claim is accordingly

14   unpersuasive.

15       As to the merits of Plaintiffs' wrongful foreclosure claim, Plaintiffs' allegations are

16   consistent with the judicially-noticed facts: Coppola defaulted on the Loan in 2009. (ECF

17   No. 52-4 at 2; *see also* ECF No. 30 at 25.) Further, Wells Fargo has not yet foreclosed on

18   the Property. (ECF Nos. 52-6, 52-7, 52-9, 52-10, 52-13, 52-14, 52-15.) Because Plaintiffs'

19   wrongful foreclosure claim accordingly lacks two necessary elements, it fails as a matter

20   of law. *See, e.g.*, *Haley v. Elegen Home Lending, LP*, Case No. 3:10-cv-00046-LRH-RAM,

21   2010 WL 1006664, at *1-*2 (D. Nev. Mar. 16, 2010) (stating that a wrongful foreclosure

22   claim only lies after the foreclosure sale and if the borrower was not in default at the time

23   of the foreclosure sale, dismissing wrongful foreclosure claim because neither of these

24   conditions were satisfied).

25       Plaintiffs' citation to *Jones v. U.S. Bank Nat'l Ass'n as Tr. for TBW Mortg.-Backed

26   PassThrough Certificates, Series 2006-3*, 460 P.3d 958 (Nev. 2020) does not change the

27   analysis, nor does it support their argument. (ECF No. 64 at 8-9.) As Defendants point out

28   in reply (ECF No. 69 at 6), that case involved a judicial foreclosure, not the non-judicial

     foreclosure process Plaintiffs seek to stop through this lawsuit, but more importantly, there,

1
2
3
4
5

the Nevada Supreme Court held that the assignee was entitled to enforce a lost note because it properly followed the lost-note procedure prescribed by Nevada statute. *See generally Jones*, 460 P.3d 958. And in any event, this is not a lost note case. (*See, e.g.*, ECF No. 52-4 at 7 (swearing under penalty of perjury that either Wells Fargo or its agent has physical possession of the note).) *Jones* does not support Plaintiffs' argument.

6
7
8
9
10
11
12
13

Plaintiffs also mention the securitization theory asserted throughout the SAC in their response (ECF No. 64 at 9-10), but "plaintiffs' claims arising out of the securitization fail." *Reyes v. GMAC Mortg. LLC*, Case No. 2:11-cv-100-JCM-RJJ, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011) (citations omitted); *see also Evalobo*, 2016 WL 7379021, at *5 ("to the extent it is a request to void the promissory note, this theory has been rejected in Nevada."). "Since the securitization 'merely creates a 'separate contract, distinct from [p]laintiffs['] debt obligations'' under the note [it] does not change the relationship of the parties in any way[.]" *Reyes*, 2011 WL 1322775, at *3.

14
15

In sum, the Court agrees with Defendants and dismisses Plaintiffs' wrongful foreclosure/lack of standing claims.

16

**C.    Breach of Contract**

17
18
19
20
21
22

Defendants seek dismissal of Plaintiffs' breach of contract claims because they have not, and cannot, assert a legally-cognizable breach—specifically because Coppola has not paid on the Loan since 2009. (ECF No. 51 at 10.) Plaintiffs nonsensically counter in a conclusory manner that they owe Wells Fargo no money because the Loan was securitized and World Savings Bank received a tax write-off. (ECF No. 64 at 9-10.) The Court agrees with Defendants.

23
24
25

As explained above, the Court rejects the securitization argument.[5] To the extent Plaintiffs are arguing that a third party paid off the Loan, whether through a tax benefit or

26
27
28

[5]Moreover, nothing in the DOT prohibits Wells Fargo from stepping into World Savings Bank's shoes. (ECF No. 52-1.) Relatedly, and per the terms of the DOT, a change in the name or ownership structure of the Lender entity in the DOT would not affect the Plaintiffs' obligations under the DOT. As noted, "Lender" is defined as World Savings Bank and its successors or assigns. (*Id.* at 2.) Wells Fargo is the successor of World Savings

7

1   otherwise, that fatally conflicts with Plaintiffs' allegation in the SAC that they have not paid

2   on the Loan in some time, which leads to the inescapable conclusion that Plaintiffs have

3   not satisfied their obligation to pay off the Loan. (ECF No. 30 at 25.) In sum, the Court

4   agrees with Defendants that it must dismiss Plaintiffs' breach of contract claim.

5           **D.     Adverse Possession**

6           Defendants argue Plaintiffs' adverse possession claim fails as a matter of law

7   because Wells Fargo has not yet foreclosed on the Property and Coppola has not paid all

8   required taxes and assessments assessed against the Property. (ECF No. 51 at 12-13.)

9   Plaintiffs counter that Coppola became adverse to Defendants either at the time he filed

10  for bankruptcy in 2010, or when he was discharged that bankruptcy in 2011, because the

11  bankruptcy discharged his obligation to repay the Loan. (ECF No. 64 at 10-13.) Plaintiffs

12  further argue that all property taxes Wells Fargo has paid to protect its interests in the

13  Property "are treated as COPPOLA having paid the property taxes." (*Id.* at 13-14.)

14  Defendants reply that Plaintiffs are simply incorrect that Coppola's bankruptcy repudiated

15  the relationship between him and the lender and reiterate that Wells Fargo paid the taxes

16  on the Property—not Coppola. (ECF No. 69 at 7-9.) The Court again agrees with

17  Defendants.

18          Coppola's bankruptcy does not eliminate Wells Fargo's ability to foreclose on the

19  Property. *See In re Blendheim*, 803 F.3d 477, 486 (9th Cir. 2015) ("The discharge

20  eliminates the creditor's ability to proceed *in personam* against the debtor whether the

21  debt is secured or unsecured; in the case of a secured debt, the creditor retains the ability

22  to foreclose on the property but can no longer proceed against the debtor personally.")

23  (citation omitted). And as noted, the Court takes judicial notice of the fact that Wells Fargo

24  has not yet succeeded in foreclosing on the Property. (ECF Nos. 52-6, 52-7, 52-9, 52-10,

25  52-13, 52-14, 52-15.) Further, the only non-binding case Plaintiffs rely on in their pertinent

26

27  _____

28  Bank. (ECF Nos. 52-2, 52-3.) Wells Fargo is therefore the Lender in the DOT. The DOT
    requires Coppola to repay Wells Fargo, which he admittedly has not done. (*See generally*
    ECF No. 52-1; *see also* ECF No. 30 at 25.)

1   response (ECF No. 64 at 11-12), *Asnake v. Deutsche Bank Nat'l Tr. Co.*, 313 F. Supp. 3d

2   84, 87-88 (D.D.C. 2018), supports Defendants' argument, not Plaintiffs'. *See id.* at 88 ("the

3   earliest time at which Defendants could have been adverse to Plaintiffs is 2017, when the

4   Superior Court approved the foreclosure."). The Court accordingly grants Defendants'

5   Motion as to Plaintiffs' adverse possession claim.[6]

6           **E.    Equitable Defenses**

7           Defendants also seek dismissal of Plaintiffs' purported claims for "Unclean Hands,"

8   "Laches," and "Unconscionable Contract" because they are equitable defenses, not

9   causes of action. (ECF No. 51 at 22-24.) Plaintiffs do not dispute these are equitable

10  defenses (ECF No. 64 at 9, 15, 16-17), but appear to argue Plaintiffs should be able to

11  assert them as causes of action because Wells Fargo has thrice initiated nonjudicial

12  foreclosure proceedings on the Property (*id.*). Defendants reiterate the same argument in

13  reply, also pointing out both that Coppola has no viable defenses against Defendants

14  because Defendants have not asserted any claims against him in this case and nonjudicial

15  foreclosure proceedings are not judicial actions. (ECF No. 69 at 9.) The Court again

16  agrees with Defendants.

17          "[N]onjudicial foreclosures are not judicial actions[.]" *Facklam v. HSBC Bank USA*

18  *for Deutsche ALT-A Sec. Mortg. Loan Tr.*, 401 P.3d 1068, 1071 (Nev. 2017). And

19  Defendants have not asserted any counterclaims against Plaintiffs. (ECF Nos. 34, 47.)

20

21  _____

22  [6]The Court accordingly need not—and does not—address Defendants' alternative
    argument that Plaintiffs could not prevail on an adverse possession claim even if Wells
23  Fargo had already foreclosed on the Property because Coppola has admittedly not paid
    the taxes on the Property in some time. (ECF No. 69 at 8-9.) But the Court cannot help
24  noting that Plaintiffs' argument responsive to that one—that the taxes Wells Fargo has
    paid to preserve its interest in the Property should be deemed Plaintiffs' payments (ECF
    No. 64 at 13-14)—is nonsensical and unpersuasive. It simply cannot be correct that
25  Coppola does not have to pay property taxes on the Property and any payments made on
    his behalf satisfy his tax obligations. Indeed, if Plaintiffs' argument was correct, many fewer
26  people would pay property taxes. Moreover, Plaintiffs' argument is foreclosed by the DOT,
    which requires Coppola to pay all required taxes (ECF No. 52-1 at 4) and expressly gives
27  Wells Fargo the right to protect its rights in the Property if Coppola does not keep his
    promises reflected in the DOT (*id.* at 8). And the DOT otherwise specifies that Wells Fargo
28  retains its rights to sell the Property if Coppola does not keep any of his promises even if
    Wells Fargo pays taxes on the Property. (*Id.* at 9, 14.)

1    Plaintiffs accordingly have nothing to defend against in this case. Thus, the Court grants

2    Defendants' Motion to the extent it seeks dismissal of Plaintiffs' equitable defenses alleged

3    as causes of action. *See Ahmed v. Deutsche Bank, N.A.*, Case No. 2:09-cv-02234-GMN,

4    2011 WL 3425460, at *7 (D. Nev. Aug. 4, 2011) ("In Nevada, unconscionability is not a

5    cause of action, but a defense to a breach of contract claim.") (citation omitted); *Seller*

6    *Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 986-87 (9th

7    Cir. 2010) ("[U]nclean hands does not constitute 'misconduct in the abstract, unrelated to

8    the claim to which it is asserted as a defense.'") (citation omitted); *Eat Right Foods Ltd. v.*

9    *Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018) ("The affirmative defense of

10    laches 'is an equitable time limitation on a party's right to bring suit, which is derived from

11    the maxim that those who sleep on their rights, lose them.") (citation omitted).

12          **F.   Seventeenth Cause of Action Against NDSC**

13         That leaves only one claim in the SAC: Plaintiffs' claim that NDSC is insufficiently

14    independent of Wells Fargo. (ECF No. 30 at 34.) Plaintiffs point out in response that

15    Defendants did not specifically address this claim in their Motion. (ECF No. 64 at 16.)

16    Defendants reply, "that cause of action was not asserted against these Defendants and is

17    in any event not a recognized cause of action under Nevada law." (ECF No. 69 at 2 n.3.)

18    Moreover, Defendants' Motion seeks dismissal of the SAC in its entirety. (ECF No. 51 at

19    25.) And NDSC joined the Motion in its entirety. (ECF No. 61.) Thus, the Court construes

20    Defendants as having moved to dismiss this claim as well. The Court will consider and

21    dismiss this claim now.

22         The Court dismisses this claim because it does "not meet the pleading

23    requirements of Federal Rule of Civil Procedure 8." *Toromanova v. First Am. Tr. Servicing*

24    *Sols. LLC*, Case No. 2:18-cv-01482-APG-VCF, 2019 WL 2996906, at *3 (D. Nev. July 9,

25    2019) (dismissing a claim because the plaintiff "neither identifies which statutory section

26    [the defendant] violated or clarifies which actions are objectionable"); *see also Mustafanos*

27    *v. Nevada*, Case No. 3:16-cv-00254-MMD-WGC, 2017 WL 991214, at *3 (D. Nev. Mar.

28    13, 2017) ("The court may *sua sponte* dismiss a complaint for failure to comply with Rule

8.") (citation omitted). Plaintiffs merely allege in a conclusory fashion—on information and belief—that NDSC is insufficiently independent of, and an agent of, Wells because they share office space. (ECF No. 30 at 34.) Plaintiffs do not mention a statute, regulation, or constitutional provision that this purported lack of independence violates, merely alleging it is "well established in foreclosure trust law that the foreclosing trustee must be independent." (*Id.*) Further, the Court is unaware of any recognized claim under Nevada or federal law that aligns with the conclusory allegations included under the 'seventeenth cause of action' heading—and Plaintiffs did not point to one in their response.

### G. World Savings Bank and BNYM

Defendants also move to Dismiss BNYM because the SAC does not allege Plaintiffs have any contractual relationship with BNYM or contain any specific allegations against BNYM. (ECF No. 51 at 24.) Defendants further point out in reply that Plaintiffs do not respond to this argument. (ECF No. 69 at 12.) The Court agrees. BNYM is alternatively dismissed because of Plaintiffs' nonresponse to this valid argument. *See* LR 7-2(d).

Defendants also point out in reply that World Savings Bank no longer exists despite Plaintiffs' baseless argument to the contrary in their response to the Motion. (ECF No. 69 at 11-12.) The Court agrees. As noted above, the Court takes judicial notice of the fact that neither World Savings Bank nor Wachovia exist anymore—via name change and merger, they are both now Wells Fargo.

In sum, the Court dismisses the SAC in its entirety.

### H. Motions Relating to NDSC's Declaration of Non-Monetary Status

Because the Court dismisses the SAC in its entirety, the dispute about NDSC's declaration of non-monetary status is now moot. NDSC filed its declaration of non-monetary status (ECF No. 35) to avail itself of the provision in NRS § 107.029(2) tolling its time to file an answer to the SAC. (ECF No. 42 at 2-3.) But now there is nothing to respond to because the SAC is dismissed in its entirety. That renders the pending motions about the declaration of non-monetary status (ECF Nos. 40, 43) moot.

I.    **Leave to Amend**

Having dismissed the SAC in its entirety, the Court will now determine whether to grant Plaintiffs' leave to amend. The Court has discretion to grant leave to amend and should freely do so "when justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Facts raised for the first time in a plaintiff's opposition papers should be considered by the Court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001).

The Court will not grant Plaintiffs leave to amend but will not dismiss Plaintiffs' claims with prejudice because it would be unjust to preclude Plaintiffs from bringing a wrongful foreclosure claim if Wells Fargo forecloses on the Property in the future. Perhaps Wells Fargo will eventually succeed in foreclosing on the Property, perhaps Plaintiffs will not be in default on the Loan at that time, and perhaps something about the foreclosure will be wrongful. However, granting Plaintiffs leave to amend in this case would be futile because, as explained above, Coppola has been in default on the Loan since 2009, Wells Fargo has not yet foreclosed on the Property, equitable defenses are just that, and the theories of liability alleged in the SAC fail as a matter of law. Moreover, Plaintiffs do not raise any facts in their opposition papers that would allow the Court to determine that permitting amendment in this case would be anything other than futile. (ECF No. 64.) The Court will therefore decline to grant Plaintiffs leave to amend.

VI.    **CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendants' motion for judgment on the pleadings (ECF No. 51) is granted.

It is further ordered that the SAC (ECF No. 30) is dismissed, in its entirety, without prejudice, but without leave to amend.

It is further ordered that Plaintiffs' motion to strike NDSC's declaration of non-monetary status (ECF No. 40) is denied as moot.

It is further ordered that NSDC's motion for determination of non-monetary status (ECF No. 43) is denied as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 13th Day of July 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE